UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **Chad Anthony Benfield**, #272046,<br>*aka Chad Benfield*<br><br>Plaintiff,<br><br>vs.<br><br>Colie Rushton, Warden, McCormick Correctional Institution;<br>Mrs. Tab, Clinic Counselor, McCormick Correctional Institution;<br>Warden Mackey, Perry Correctional Institution;<br>Paula Jackson, Clinic Counselor, Perry Correctional Institution; and<br>SC Department of Corrections (SCDC) State Class Board,<br><br>Defendants. | ) **C/A No. 8:06-2609-JFA-BHH**<br>)<br>)<br>)<br>)<br>)<br>) Report and Recommendation<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

_____

This is a civil rights action filed *pro se* by a state prison inmate.[1]    Plaintiff is currently incarcerated at Lieber Correctional Institution, part of the South Carolina Department of Corrections (SCDC) prison system.  In the Complaint filed in this case on September 20, 2006, Plaintiff alleges that he has been raped while in SCDC custody at two different institutions:  first, at McCormick Correctional Institution numerous times during a four-year period that began in 2001, and second, at Perry Correctional Institution on April 18, 2006.  He alleges that he first told his counselor at McCormick, Defendant Mrs. Tab, about the rapes at that institution in February 2006 and requested protective custody and mental health treatment.  Rather than receiving that which he requested, he was transferred to Perry following a suicide attempt.  He claims that, rather than being given protective custody, he was put in a pod at Perry with prisoners with more violent inmates than he, resulting in the April 18, 2006 rape.

---

[1] Pursuant to 28 U.S.C. §636(b)(1), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in such *pro se* cases and to submit findings and recommendations to the District Court.  *See also* 28 U.S.C. § 1915(e); 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

Plaintiff alleges that he was finally sent for mental health treatment on April 24, 2006 and that he and his caseworker tried to get him placed on protective custody, but that the request was denied.  Instead of being placed in protective custody, Plaintiff was transferred to his current place of confinement, Lieber, and placed in "lock up."  He alleges that SCDC officials continue to refuse to grant him protective custody because they say he is safe since no longer housed with those who raped him, but he claims that he has been threatened with death wherever he goes so he refused to go "to the yard" out of fear.  He seeks injunctive relief and damages.

Following initial review of the Complaint in which Plaintiff indicated that he had not filed a prison grievances about his allegations (Entry 1, Complaint, at 2), special interrogatories were propounded to Plaintiff in order to obtain further information about any possible attempts by Plaintiff to exhaust his administrative remedies with regard to his claims.  The preliminary statement on the set of interrogatories warned Plaintiff that his Complaint could be subject to summary dismissal if he did not exhaust his administrative remedies before filing this lawsuit.

Plaintiff has now filed his Answers to the Court's Special Interrogatories. (Entry 6). According to his answers, Plaintiff did not file any prison grievances about the alleged refusal of protective custody, the alleged denial of mental health care, or about the alleged rapes by other inmates at any time prior to filing this lawsuit.  He points out that he was hospitalized for a period of time after the rape at Perry Correctional Institution, claims that he did not know that he could file a grievance about the rape, and claims that he has written many letters to the Defendant state classification board and Lieber officials about his needing protective custody.  He does not claim that he has been prevented from filing grievances by any affirmative act of any SCDC official or employee, nor does he claim to have attempted to file a grievance that it was rejected.

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's *pro se* Complaint filed in this case.  This review has been conducted pursuant to the

procedural provisions of 28 U.S.C. § § 1915, 1915A, and the Prison Litigation Reform Act of 1996, and in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992); Neitzke v. Williams, 490 U.S. 319, 324-25 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Maryland House of Correction, 64 F.3d 951 (4th Cir. 1995)(en banc); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983); Boyce v. Alizaduh, 595 F.2d 948 (4th Cir. 1979).

Pro se complaints are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9-10 & n.7 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. Fine v. City of New York, 529 F.2d 70, 74 (2d Cir. 1975). Nevertheless, the requirement of liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387(4th Cir. 1990). Even under this less stringent standard, however, the Complaint filed in this case is subject to summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B).

As Plaintiff was previously warned in the introductory paragraph of the Court's Special Interrogatories,

> [p]er the United States Supreme Court and the United States Congress, prison inmates must fully exhaust "such administrative remedies as are available" before they may pursue a civil action under 42 U.S.C. § 1983. See 42 U.S.C. § 1997(e); Booth v. Churner, 532 U.S. 731 (2001)("we think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."); [see also Woodford v. Ngo, 126 S.Ct. 2378, 2006 WL 1698937 (June 22, 2006) (prisoners must "properly exhaust" their administrative remedies before coming into court).] If [Plaintiff] have not fully completed the SCDC/BOP administrative process with regard to EACH of your [Plaintiff's] claims against EACH named defendant, your [Plaintiff's] case could be subject to dismissal for failure to exhaust your [Plaintiff's] remedies.

(Entry 6). In the United States Supreme Court's most recent pronouncement on the subject of exhaustion of administrative remedies, Supreme Court Justice Samuel Alito stated the following with regard to the requirement that prisoners comply with all time limitations and to the necessity for prisoners to complete all required steps of a prison administrative remedy process before filing a lawsuit in federal court:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and *doing so properly* (so that the agency addresses the issues on the merits)." Pozo [v. McCaughtry], 286 F.3d, at 1024 (emphasis in original).
> . . . .
>
> Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

Woodford v. Ngo, 126 S.Ct. at 2385-2387. Under the applicable South Carolina Department of Corrections (SCDC) Inmate Grievance System Policy/Procedure, an inmate must institute the process by filing a Step 1 grievance form, which is then responded to by the Warden of the institution. "If the grievant is not satisfied with the decision of the Warden [on the Step 1 grievance], the grievant may next appeal to the Division Director of Operations for *final* resolution of the grievance." SCDC Policy/Procedure GA-01.12, at § 13.4 (Jan. 1, 2006). In order to institute this appeal, a prisoner must complete

> the SCDC Form 10-5a, Step 2, and [submit] this form, as well as the completed copies of Step 1, to the Institutional Inmate Grievance Coordinator within five (5) calendar days of the receipt of the [Warden's] response by the grievant.
> . . . .
>
> The responsible official will render the final decision on the grievance within 60 days from the date that the Institutional Inmate Grievance Coordinator received the appeal of the Warden's decision.

*Id.* at § 13.5.

From Plaintiff's own Answers to the Special Interrogatories it is clear that this case was filed prematurely and is, thus, subject to summary dismissal pursuant to 42 U.S.C. § 1997e.   Plaintiff admits that he did not even file a Step 1 grievance about the matters of which he complains before filing this lawsuit.   His attempts to excuse this failure to pursue exhaustion of his administrative remedies based on his hospitalization following the alleged rape at Perry Correctional Institution are to no avail since he did not even attempt to institute the grievance process once he was released from the hospital and was transferred to Lieber.   *Compare* Days v. Johnson, 322 F.3d 863 (5th Cir.  2003)(holding administrative remedies to be unavailable if an inmate is unable to timely file because of physical injury *and* the grievance system rejects that inmate's subsequent attempts to file as untimely) *with* Parker v. Adjetey, 2004 WL 330866 *1 (5th Cir., Feb. 20, 2004)(dismissed for lack of exhaustion where prisoner did not attempt to file grievances after his illness/disability (coma) subsided even though such attempted filing would be untimely); *see also* Chavez v. Thorton, 2006 WL 2715336 (D. Colo., Sept. 22, 2006)(same).   Plaintiff has been incarcerated within the SCDC prison system since 2001, and it is known from filings in numerous other prisoner cases in this Court that inmates are provided with copies of the inmate grievance policy and are given at least rudimentary instructions about using when they are first brought into the prison system.  *See* Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)(a federal court may take judicial notice of the contents of its own records).   As a result, Plaintiff's claim that he did not know that he could file grievances should not be considered a credible excuse.

"The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance."   Woodford v. Ngo, 126 S.Ct. at 2388.   In order to fully exhaust administrative remedies, it is the responsibility of the prisoner to fully comply with the terms of the applicable policy regarding time limits and procedural matters.   *See* Johnson v.

Johnson, 385 F. 3d 503 (5th Cir. 2004); Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002). It is not the federal court's place to order the prison to change or ignore its established rules and/or time limitations in order to save a prisoner's claims from his or her own failure to fully comply with the established procedures before filing federal lawsuits. Since Plaintiff failed to properly exhaust his SCDC administrative remedies before filing this case, the Complaint filed in this case should be summarily dismissed without prejudice pursuant to 42 U.S.C. § 1997e. Frost v. Hagan, 2005 WL 2476202 (4th Cir., Oct. 7, 2005)("Because [the prisoner] did not demonstrate to the district court that he had exhausted administrative remedies or that such remedies were not available, the court's dismissal of the action, without prejudice, was not an abuse of discretion.")

## **Recommendation**

Accordingly, it is recommended that the District Court dismiss the Complaint in this case *without prejudice* and without issuance and service of process. *See* Denton v. Hernandez; Neitzke v. Williams; Haines v. Kerner; Brown v. Briscoe, 998 F.2d 201, 202-04 & n. * (4th Cir. 1993); Boyce v. Alizaduh; Todd v. Baskerville, 712 F.2d at 74; *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal). Plaintiff's attention is directed to the important notice on the next page.

Respectfully submitted,

s/Bruce H. Hendricks
United States Magistrate Judge

October 30, 2006
Greenville, South Carolina

### Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
### &
### The **Serious Consequences** of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of service. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-71 (1976); Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); Oliverson v. West Valley City, 875 F. Supp. 1465, 1467 (D. Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. *See* Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991); *see also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In *Howard*,, the court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"; which involved a *pro se* litigant); Goney v. Clark, 749 F.2d 5, 7 n. 1 (3d Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins; Small v. Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

### Larry W. Propes, Clerk
### United States District Court
### Post Office Box 10768
### Greenville, South Carolina 29603